MEMORANDUM OF DECISION ON DAMAGES
EAGAN, Judge.
BACKGROUND
The plaintiff, Reginald Crenshaw, alleged that he sustained personal injuries and property damage as the result of a one-car accident in March 2007 on the level two exit of the Riverview Garage at the Mohegan Sun Casino. Following a trial, this Court issued a decision on February 3, 2010, finding for the plaintiff against the defendant Mohegan Tribal Gaming Authority (MTGA) on the issue of liability. The plaintiffs actual damages included $18,928.00, consisting of lost wages.
The decision also found that the plaintiffs medical bills were $8,265.92, which were subject to a collateral source deduction. However, the court left it to the parties to determine the extent to which the collateral source deduction applied, as well as the special damages to which plain *171 tiff was entitled. Decision, p. 174. Unfortunately, the parties were unable to reach an agreement. Consequently, the court requested additional briefs addressing both of these issues and conducted a further hearing.
FINDINGS OF FACT
1. $1,494.50 of plaintiffs medical bills, totaling $8,265.92, were paid for by insurance.
2. $2980.79 of plaintiffs medical bills were written off pursuant to contract.
CONCLUSIONS OF LAW
1. Plaintiffs medical bills of $8,265.92 are subject to a collateral source reduction of $4,475.29.
2. Section 3-251 a(3) of the Mohegan Torts Code sets the maximum amount that can be awarded for non-economic damages, but does not require an automatic award of 200 percent of actual damages.
DISCUSSION
A. Actual Damages
1. Wages
The April 15, 2010 Decision set forth a factual finding that plaintiff was entitled to lost wages in the amount of $18,928.00 and concluded that judgment should enter for plaintiff. In its April 15, 2010 Brief, the defendant MTGA seeks to reopen the decision on plaintiffs lost wages, in large part, on the ground that the court did not address defendant’s mitigation of damages argument. Defendant’s mitigation argument was expressly rejected by the court when it found there was no credible evidence that plaintiff could return to work until December 2, 2008. Findings of Fact, Number 23,
2, Medical Bills—Collateral Sources Pursuant to the Torts Code (Mohegan Code of Laws, Part II, Chap. 3, Art. 10), any award for actual damages, defined as the measured loss of money or property,
“... shall be reduced by payments received by the prevailing party from collateral sources as defined herein. The cost of reasonable and necessary medical care, including hospitalization, diagnostic studies, physical therapy, rehabilitative sen-ices, custodial care, psychological counseling, and all other generally accepted therapies for the treatment of an injury, as defined in this Section, shall include the total amount of invoices submitted, regardless of the fact that some or all of the submitted invoices are subject to adjustments or write-offs resulting from contractual agreements or other relationships between providers and third-party payors, including Medicare.” Torts Code § 3-245 defines collateral sources as
“any payments made to the claimant, or on his behalf, by or pursuant to:
(1) Any health or sickness insurance, automobile accident insurance that provides health benefits, and any other similar insurance benefits, except life insurance benefits available to the claimant, whether purchased by him or provided by others; or
(2) Any contract or agreement of any group, organization, partnership or corporation to provide, pay for or reimburse the costs of hospital, medical, dental or other health care services; “Collateral sources” do not include amounts received by a claimant as a settlement.”
Additionally, § 3-251 (c) directs the court to deduct from actual damages ,
“the total amount of collateral sources which have been paid for the benefit of *172 the claimant as of the date the court enters judgment (the “collateral source deduction”), provided that no collateral source deduction shall be made where a right of subrogation exists with respect to the collateral source. The amount of a write-off by a healthcare provider shall constitute a collateral source paid for the benefit of the claimant under this section: (i) if the write-off is forgiven either pursuant to the requirements of an insurance arrangement or any contract or agreement; or (ii) when a health care provider is statutorily prohibited from seeking compensation for the expenses it writes off. The collateral source deduction shall be reduced in proportion to the claimant’s comparative negligence, if any. The Collateral source deduction from actual damages shall not be reduced in any way by the cost of health insurance premiums or other costs of procurement of the collateral source.”
The parties agree that $1,010.20 of plaintiffs medical bills of $8,265.92 remain outstanding and payable to the defendant. Accordingly, they are not subject to any collateral source reduction.
The parties also agree that $1,494.50 of plaintiffs medical bills were paid for by insurance and, therefore, are a collateral source that must be deducted from plaintiffs actual damages pursuant to Torts Code § 3-245. Plaintiff further conceded at the hearing on damages that another $2,980.79 of his medical bills were written off by providers pursuant to contract, thereby necessitating a collateral source reduction under Section 3-251 which provides:
“The amount of a write-off by a healthcare provider shall constitute a collateral source paid for the benefit of the claimant under this section: (i) if the write-off is forgiven ... pursuant to the requirement of ... any contract or agreements;
The dispute between the parties over the application of collateral sources involves an additional $2,780.43 in medical bills that were written off by the providers. With regard to this portion of plaintiffs medical bills, the various providers told plaintiff the bills had been written off, but no reasons were given for the write-offs.
The defendant maintains that because the providers gave no stated reason for the write-offs, this court must find that it was done either “pursuant to the requirements of an insurance agreement or any contract or agreement; or (ii) when a health care provider is statutorily prohibited from seeking compensation for the expenses it writes off.” 33-251 (k) As such, this amount would clearly be subject to a collateral source deduction.
The problem with defendant’s argument is that it places the burden of proof on the plaintiff to establish that a medical bill was not paid pursuant to contract or statutory provision. In Connecticut courts, it is the defendant’s burden to prove whether a write-off by a provider constitutes a collateral source. Segarra v. Vallee, 2010 WL 2364430 (Conn.Sup.Ct., CV 085017926S, April 2010); Perillo v. Jacobs, 47 Conn.L.Rptr. 764, 2009 WL 1333920 (Conn.Sup.Ct., CV 066000215S, April 2009).
On point is Couture v. Donnarumma, 44 Conn.L.Rptr. 455, 2007 WL 4111377 (Conn.Sup.Ct., Nov. 2007), where the court found that: “with respect to the write-offs, the evidence reflects, the parties agree, and the court finds that the rest and remainder of plaintiff’s medical bills were written off by her health care providers, amounting to $1,366.90. Whether this amount was written off voluntarily or pursuant to contractual relationships is un *173 clear. In the absence of proof that these write-offs were required by an insurance arrangement or any contract or agreement and thereby qualify as collateral sources, the court cannot conclude they are collateral sources ... Accordingly, no collateral source reduction will be permitted for these write-offs either.” This court can find no reason why the rule prevailing in the Connecticut state courts requiring the defendant to establish a write-off is a collateral source should not be adopted here. Rather, having established the extent of medical bills, the plaintiff should not then also have to prove none of his bills are subject to a collateral source reduction.
Plaintiffs medical bills of $8,265.92 are subject to a collateral source reduction in the amount of $4,475.29, leaving $3,790.63 unaffected.
B. Non-Economic Damages
The Mohegan Torts Code does not allow awards of punitive damages and permits awards of only a limited amount of non-economic damages defined as: “... all non-pecuniary losses including, but not limited to, physical pain and suffering and mental and emotional suffering.” § 3-245. Further, Section 3-251(3) of the Torts Code then provides that: “(a) This Code does not permit recovery from ... the Mohegan Tribal Gaming Authority ... of (3) Non-economic damages in excess of two hundred (200) percent of the proven actual damages prior to any reduction for collateral source payments; ...”
It is plaintiffs position that this language mandates the court award plaintiff 200 percent of his actual damages, before any collateral source reduction, as non-economic damages. The defendant counters that the language limiting non-economic damages in excess of (200) percent “sets a cap, but not a floor, on the recovery of non-economic damages.” Defendant’s Brief Regarding Damages, p. 8.
The parties apparently agree that this is an issue of first impression. Looking solely at the express language in Section 3-251(a)(3), this court finds that defendant’s position is the better one. If the drafters of the Code wanted to give plaintiffs an automatic 200 percent of their actual damages as non-economic damages, they would have said exactly that—non-economic damages shall be 200 percent of actual damages. Instead the language “in excess of strongly supports construing the statute as requiring the trial court to exercise its sound discretion in awarding non-economic damages, but not to exceed 200 percent of actual damages.
In determining the appropriate award of non-economic damages here, the court notes that the automobile accident in which plaintiff sustained his injuries involved his hitting a light pole at 10 miles per hour and that plaintiff almost immediately received medical treatment for his injuries. Also, while plaintiff was, indeed, treated for back/neck pain and soft tissue injury from the date of the accident in March 2007 until December 2008, plaintiff only sporadically visited various health care providers during this period. The court does not find, on these facts, that plaintiffs non-pecuniary damages merit 200 percent of his actual damages.
Rather, plaintiffs non-economic damages should be limited to 100 percent of his actual damages, which, pursuant to § 3-251 (c) of the Torts Code, are not to be reduced: “by the cost of health insurance premiums or other costs of procurement of the collateral source.” Here, there is no evidence the plaintiff bore the costs of any health insurance premiums or of procuring any other collateral source.
Accordingly, plaintiff’s total actual damages are:
*174 $18,928.00
+ medical bills
8,265.92
- (4,475.29) collateral sources deduction
$22,718.63 actual damages
Plaintiffs non-economie damages are:
$22,718.63 x 100% of actual damages
$22,718.63
CONCLUSION
Judgment shall enter for the plaintiff against the defendant MTGA for actual damages in the amount of $22,718.63 and non-economie damages in the amount of $22,718.63, for a total award of $45,487.46.
So ordered this.